**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE**


Paragon Residential Group, LLC
Paragon Residential Properties, LLC,
James Leavitt and Louise Parker

     v.                                  Civil No. 07-cv-118-JL
                                             Opinion No. 2008 NH 142

Town of Hanover


## O R D E R

Plaintiffs Paragon Residential Group, LLC and Paragon Residential Properties, LLC ("Paragon") agreed to purchase a parcel of land from co-plaintiffs James Leavitt and Louise Parker ("the Leavitt family") with the intention of building a planned residential development on the land.  Paragon and the Leavitt family are now suing the Town of Hanover, alleging that Hanover acted in bad faith to prevent the development project.  The plaintiffs assert four civil rights claims under 42 U.S.C. § 1983, three claims under the Declaratory Judgment Act, 28 U.S.C. § 2201, and six state law claims.

The court has jurisdiction over this matter under 28 U.S.C. §§ 1331 (federal question), 1343 (civil rights), and 1367 (supplemental jurisdiction).

Hanover has moved for judgment on the pleadings.  The court heard oral argument on June 30, 2008.  Hanover's motion for judgment on the pleadings is granted as to counts four

(procedural due process) and seven (Contracts Clause).  As to the remaining claims, the court denies Hanover's motion without prejudice.


## I.   APPLICABLE LEGAL STANDARD

Hanover has moved for judgment on the pleadings under Federal Rules of Civil Procedure 12(c).  "The standard for evaluating a Rule 12(c) motion for judgment on the pleadings is essentially the same as that for deciding a Rule 12(b)(6) motion."  Pasdon v. City of Peabody, 417 F.3d 225, 226 (1st Cir. 2005); see also Perez-Acevedo v. Rivero-Cubano, 520 F.3d 26, 29 (1st Cir. 2008).  The court views all well-pleaded factual allegations in the nonmovants' pleadings in the light most favorable to the nonmovants and draws all reasonable inferences in their favor.  Zipperer v. Raytheon Co., 493 F.3d 50, 53 (1st Cir. 2007), cert. denied, 128 S. Ct. 1248 (U.S. 2008).  Although the complaint "does not need detailed factual allegations," the allegations "must be enough to raise a right to relief above the speculative level."  Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1965 (U.S. 2007); Perez-Acevedo, 520 F.3d at 29.[1]

---

[1] Until recently, the pleading standard for a motion to dismiss set a high bar for the movant, requiring that the complaint be maintained "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  See Conley v. Gibson, 355 U.S. 41, 45, 46 (1957), abrogated by Bell Atl. Corp., 127 S. Ct. at 1969. In 2007, however, the U.S. Supreme Court retired the "no set of

II.   **BACKGROUND**[2]

Paragon is a Connecticut-based developer.  James Leavitt and his sister, Louise Parker, live in Shrewsbury, New Jersey and Enfield, New Hampshire, respectively.  Together, the two siblings own a 259-acre property on Greensboro Road in Hanover, New Hampshire ("the Leavitt property").  In September 2004, after researching the suitability of the site for a "mixed-use" development, Paragon agreed to purchase the Leavitt property from the Leavitt family.  The municipal regulatory dispute that subsequently entangled Paragon's development plans is the subject of this case.

On January 12, 2005, Paragon met with Hanover Town Manager Julia Griffin to preliminarily discuss its plans to build a Planned Residential Development ("planned development") on the Leavitt property.  Griffin encouraged Paragon to include a Continuing Care Retirement Community ("retirement community") within the planned development.  At the time, both uses were expressly permitted by Hanover's zoning ordinances, and Paragon

_____

facts" formulation in favor of the standard quoted above, which requires more of the nonmovant.  Bell Atl. Corp., 127 S. Ct. at 1968-69.  This new pleading standard applies to both Rule 12(b)(6) motions to dismiss and Rule 12(c) motions for judgment on the pleadings.  Perez-Acevedo, 520 F.3d at 29.

[2] As required on a motion for judgment on the pleadings, this statement of the facts treats Paragon's allegations as true and draws all reasonable inferences in Paragon's favor.

believed that the project was consistent with the 2003 Hanover
Master Plan.

After a series of meetings with town officials and
residents, Paragon presented its development proposal to the
Hanover Planning Board on July 5, 2005.  The proposal consisted
of a planned development that included forty-five single-family
homes, forty-one townhouses, and a retirement community.  At that
meeting, Town Planner John Edwards and Assistant Town Planner
Vicki Smith both voiced their disapproval of the project and the
development proposal.

Three weeks later, the Planning Board voted to adopt a new
"Four-Step Design Review Process" for new subdivisions, which
imposed significant new obligations on developers.  The Planning
Board specified that this new procedure would be retroactively
applied to Paragon's application.  About two months after the
Four-Step Design Review process was adopted, Paragon submitted a
new application to the Planning Board revised to comply with this
new review process.

On October 11, 2005, the Hanover Planning Office conducted a
staff review of the Paragon proposal but failed to provide
advance notice to Paragon.  The notice was mailed to Paragon on
the Friday before the Columbus Day holiday weekend (October 7,
2005) and arrived the day of the review, which took place the day
after the Columbus Day holiday (October 11, 2005).

-4-

On November 1, 2005, the Planning Board held a public hearing on Paragon's application.  After the meeting, in an exchange captured by the Town's tape recorder, Edwards criticized the project's proposed density and argued that Greensboro Road was inadequate to handle the anticipated increase in traffic.  In a discussion regarding certain off-site improvements, Edwards suggested, "You can make [the off-site improvements] a requirement of this developer.  It's a bit outrageous, but they have -- would then have to face the choice, do they tie themselves up in court for two years litigating it . . . or do they just go ahead and [make the improvements at their own expense]?"

Meanwhile, Paragon prepared two applications to the Hanover Zoning Board of Adjustment:  (1) a request for a special exception to allow construction and mitigation within wetlands or wetland setback areas in certain areas of the Leavitt property, and (2) a request for a variance to allow Paragon's retirement community to have a gabled roof five feet higher than the vertical height limit prescribed in the zoning ordinance.  The Zoning Board scheduled a hearing to consider both the wetlands special exception and the height variance on November 3, 2005, but failed to give Paragon notice of the hearing.  Because Paragon did not learn of the hearing in time, consideration of its applications was continued until December 1, 2005.  Although

-5-

Paragon formally protested the lack of notice to Town Manager Griffin and Town Planner Edwards, its protest was never acknowledged.

The Hanover Conservation Commission scheduled a hearing to review Paragon's application for a wetlands special exception on November 9, 2005, but similarly failed to give Paragon notice of the hearing.  Paragon managed to attend the hearing, however, and the Conservation Commission approved Paragon's wetlands mitigation plan on November 16, 2005.

On December 1, 2005, Paragon arrived for the scheduled Zoning Board hearing with three consultants who had traveled from out-of-state to testify.  The Zoning Board nevertheless continued the hearing on Paragon's wetlands special exception and height variance applications a second time, rescheduling the hearing for January 5, 2006, because only three of the five Zoning Board members were present.  At the January 5th hearing, Zoning Administrator Judith Brotman raised new concerns about the requested height variance, forcing consideration of that application and the wetland's special exception to be continued until January 19, 2006.

At the January 19th hearing, Zoning Administrator Brotman asserted that information in Paragon's wetlands special exception application was "either missing or not fully detailed," though she had not communicated to Paragon any requests for additional

information.  To address Brotman's concerns, the Zoning Board
continued the hearing for about one month, until February 23,
2006.  In response to Paragon's objection to the continuing
delays, all Zoning Board members pledged to be present at the
next hearing.

The Zoning Board chose to consider Paragon's wetlands
special exception just one week later, on January 26, 2006,
without giving notice of its intent to Paragon.  At that hearing,
not attended by Paragon because Paragon had received no notice of
it, the Zoning Board voted to retain an independent consultant to
review Paragon's Wetland Impact Analysis at Paragon's expense,
and continued all further proceedings on the wetlands special
exception until this consultant's work could be completed.  (The
Town did not select the consultant, however, until June 26,
2006.)

On February 23, 2006, Paragon and its out-of-state
consultants arrived at the Zoning Board hearing to find that
despite the Town's January 19th promise to muster a full board,
only three members of the Zoning Board were present and voting.
The reduced-member board heard Paragon's application for the
roof-height variance and took the matter under advisement.  Two
weeks later, the Zoning Board voted unanimously to deny the
height variance.  This decision was based in part on the Zoning

Board's conclusions that it had insufficient time to consider Paragon's application and that the $852,000 expense of constructing a conforming non-gabled roof was "de minimis."

Paragon then filed a timely motion for rehearing, which (after a brief dispute involving the proper pre-printed form to use), the Zoning Board denied without comment. Paragon appealed this denial to the Grafton County Superior Court. That appeal has since been stayed pending the outcome of this case.

Meanwhile, on March 14, 2006, the Planning Board determined that its Four-Step Design Review of Paragon's application was complete and that Paragon could now submit its documentation. In response, Paragon prepared the necessary supplementary materials documenting the completion of the Four-Step Design Review process and attempted to deliver these materials to the Town on May 4, 2006. Town Planner Edwards and Assistant Town Planner Smith refused to accept the delivery.[3] Edwards yelled at Paragon's counsel in a threatening and belligerent manner until a nearby Hanover police officer intervened and escorted Edwards away.

---

[3] The Complaint does not make it clear why Edwards and Smith refused to accept delivery of these materials. The Town denies this allegation, alleging that Smith merely refused to sign a form that Paragon's attorney asked her to sign in connection with the delivery.

-8-

Paragon's counsel later left the supplementary materials with the Town Manager without incident.

During the same time period, the Planning Board reviewed and recommended for voter approval a number of zoning amendments which, if approved, would make it difficult or impossible for Paragon to build the development it had planned.  Many of these amendments were approved at the annual Town Meeting on May 9, 2006.  As enacted, the amendments prohibited the construction of both Planned Residential Developments and Continuing Care Retirement Communities in the district where the Leavitt property was located, modified density calculations in a manner that considerably decreased the maximum density for the Leavitt property, and modified lot size and frontage requirements in a manner that effectively prohibited Paragon's development.

On May 30, 2006, the Planning Board unanimously found that because Paragon's application did not comply with the newly adopted zoning amendments, the application was "not complete." Accordingly, the Board voted to take no further action on the application.  Paragon appealed that decision to the Grafton County Superior Court pursuant to New Hampshire law.  The appeal has been stayed pending the outcome of Paragon's federal case.

III. **ANALYSIS**

A.     **Procedural due process § 1983 claim (Count 4)**

Paragon alleges that the Town[4] violated its Fourteenth
Amendment right to procedural due process by:  (1) forcing
Paragon through unnecessary procedural hurdles at significant and
considerable expense, (2) subjecting Paragon's application to
unjustifiable delays that prevented the application from vesting
and thereby creating an opening for the Town to enact contrary

---

[4] As a general rule, a municipality cannot be held liable
for injuries inflicted by its employees or agents unless they
were carrying out a "policy or custom" of the municipal
government.  See Monell v. Dep't of Soc. Servs., 436 U.S. 658,
694 (1978).  Hanover argues that Paragon failed to establish the
existence of a municipal policy or custom.  Paragon correctly
points out, however, that single acts by government
decisionmakers or policy boards may constitute official
government policy.  See Pembaur v. City of Cincinnati, 475 U.S.
469, 481 (1986) (holding that a single act by a government
decisionmaker where that decisionmaker has "final authority to
establish municipal policy with respect to the action ordered" is
an act of official government policy for § 1983 purposes);
Cordero v. De Jesus-Mendez, 867 F.2d 1, 7 (1st Cir. 1989)
(holding that the actions of the town's mayor constitute the
official policy of the municipality for § 1983 purposes).  In
this case, Paragon's procedural due process claim concerns the
Town's zoning amendments and the application of the zoning
regulations by the Zoning Board and Planning Board.  The
amendments to the zoning regulations are by definition policies
of the Town.  Meanwhile, the actions of the Zoning Board and
Planning Board concern areas over which the two respective boards
have policymaking authority.  Thus, to the extent that Paragon
alleges that the Town and its various boards took these actions
collectively rather than alleging that particular board members
took them individually, these actions are policy decisions for
which the Town may be held liable.

zoning amendments to block the project, and (3) amending the zoning ordinance during the pendency of Paragon's application in a manner that forced Paragon to make significant, expensive changes to its application.

The Fourteenth Amendment prohibits any state from depriving "any person of life, liberty, or property, without due process of law."  U.S. Const. amend XIV, § 1.  To make out a procedural due process violation, Paragon "must allege first that it has a property interest as defined by state law and, second, that the defendants, acting under color of state law, deprived it of that property interest without constitutionally adequate process." PFZ Props., Inc. v. Rodriquez, 928 F.2d 28, 30 (1st Cir. 1991).

As to the first prong, the Town does not dispute that Paragon had a property interest as defined by state law.  See Cmty. Res. for Justice, Inc. v. City of Manchester, 154 N.H. 748, 758 (2007) (holding that "the right to use and enjoy property is an important substantive right" under New Hampshire law).  The court therefore assumes without deciding that Paragon has adequately alleged the first prong.

As to the second prong, First Circuit precedent is clear that when an applicant's claim is based upon a zoning board's circumvention or abuse of an otherwise valid permitting process, his or her right to procedural due process is violated only when

-11-

the *post-deprivation* process available to the applicant under
state law was constitutionally inadequate.  See, e.g., SFW
Arecibo, Ltd. v. Rodriquez, 415 F.3d 135, 139 (1st Cir. 2005)
(holding that for a procedural due process challenge to a
planning board's revocation of a land use permit, the inquiry
focuses on the adequacy of the post-deprivation, not pre-
deprivation, process); Nestor Colon Medina & Sucesores, Inc. v.
Custodio, 964 F.2d 32, 40 (1st Cir. 1992) (holding that where
plaintiffs "do not challenge the facial adequacy of the [planning
board] permitting procedures themselves" but instead claim that
"officials, acting under the malign influence of the governor and
other politicians, violated and abused those procedures," the
demands of procedural due process are satisfied by Puerto Rico's
adequate post-deprivation process); PFZ Props., 928 F.2d at 31
(holding that for a procedural due process challenge to a
planning board's refusal to process necessary drawings, the only
question is whether the post-deprivation process was adequate).

This court has previously held that New Hampshire law
provides ample post-deprivation processes.  E.g., Bourne v. Town
of Madison, 494 F. Supp. 2d 80, 89 (D.N.H. 2007) (holding that
New Hampshire's post-deprivation remedies in the land use context
satisfy procedural due process); Monadnock View Holdings, LLC v.
Town of Peterborough, No. 05-cv-449-PB, 2006 WL 3750015, at *7

(D.N.H. Dec. 19, 2006) (unpublished) (holding that New Hampshire's post-deprivation remedies in the zoning context satisfy procedural due process).  In addition to having the right to a rehearing by the Town, see N.H. Rev. Stat. Ann. § 677:2 (2008), Paragon has the right to appeal "illegal or unreasonable" decisions by the Zoning Board or Planning Board to the New Hampshire Superior Court.  See N.H. Rev. Stat. Ann. § 677:4 (2008); N.H. Rev. Stat. Ann. § 677:15(I) (2008).  Although such appeals are typically limited to a review of the record, see Bayson Props., Inc. v. City of Lebanon, 150 N.H. 167, 170 (2003), the superior court does have the option of taking evidence or appointing a referee to take evidence.  See N.H. Rev. Stat. Ann. § 677:13 (2008); N.H. Rev. Stat. Ann. § 677:15(III) (2008).  Such evidence may be considered by the superior court even though it was not before the relevant town board.  Pappas v. Manchester Zoning Bd. of Adjustment, 117 N.H. 622, 625 (1977).

This availability of post-deprivation process is identical to what the First Circuit has found adequate in other cases.  See SFW Arecibo, 415 F.3d at 140 (holding post-deprivation process adequate where the applicant had the right to petition the administrative agency for reconsideration and to seek judicial review in the courts of Puerto Rico); Licari v. Ferruzzi, 22 F.3d 344, 348 (1st Cir. 1994) (holding post-deprivation process

adequate where the applicant had numerous opportunities to meet with town officials to recover the promised permits, the right to an administrative appeal, and the right to judicial review); Nestor Colon Medina, 964 F.2d at 40 (holding post-deprivation process adequate where the applicant had the right to petition the administrative agency for reconsideration and to seek judicial review in the courts of Puerto Rico); PFZ Props., 928 F.2d at 31 (same).

Paragon argues that New Hampshire's post-deprivation procedures are nevertheless inadequate because there was no way for Paragon to file an interlocutory appeal of the Planning Board's imposition of the new design requirements on Paragon's pending application.  This argument, while understandable, is ultimately unpersuasive.  In Licari, the First Circuit explicitly rejected a similar argument that the available "remedies are insufficient solely because relief might be delayed, and damages are unavailable."  See 22 F.3d at 348.  Here, as in Licari, the mere fact that Paragon suffered damage from its inability to immediately obtain relief does not mean that the procedures available to Paragon were constitutionally inadequate.  See id.

Paragon additionally argues that the post-deprivation procedures are inadequate because they typically involve only a record review that, Paragon argues, would not adequately explore

-14-

the bad-faith nature of the Town's actions.  But as noted above, it is within the superior court's discretion to take additional evidence if the court deems it appropriate.  See N.H. Rev. Stat. Ann. § 677:13; N.H. Rev. Stat. Ann. § 677:15(III).  Thus, it is entirely possible (and, in this court's view, even probable) that, urged by Paragon, the superior court could choose to explore and find bad faith behind the Town's actions as alleged in Paragon's complaint.[5]

Paragon has failed to state a viable procedural due process claim.  Even viewing all well-pleaded factual allegations in the light most favorable to Paragon and drawing all reasonable inferences in its favor, Paragon has not alleged a violation of its procedural due process rights that entitles it to federal relief.  The Town is therefore entitled to summary judgment on Count 4.  See Fed. R. Civ. P. 12(c); Perez-Acevedo, 520 F.3d at 29.

---

[5] At the motion hearing, Paragon argued that it would probably be difficult to convince a state superior court judge to take such measures, and that this should cut against the adequacy of New Hampshire's post-deprivation procedures.  Even accepting Paragon's characterization, however, this argument is unavailing. The court's evaluation of the available post-deprivation process turns on the adequacy of the procedure in the abstract, not on speculation regarding the possible outcome of that process.  See PFZ Props., 928 F.2d at 31.

**B.**   **"Contracts Clause" claim (Count 7)**

Paragon alleges that Hanover violated the Contracts Clause
of the Constitution by adopting zoning ordinance amendments that
impaired the previously-existing contractual relationship between
Paragon and the Leavitt family.  <u>See</u> U.S. Const. art. I, § 10.

The Contracts Clause prohibits states from passing any
"[l]aw impairing the Obligation of Contracts . . ."  U.S. Const.
art. I, § 10, cl. 1.  "The Clause is not, however, the Draconian
provision that its words might seem to imply. . . . [T]he
Contract Clause does not operate to obliterate the police power
of the States."  <u>Allied Structural Steel Co. v. Spannaus</u>, 438
U.S. 234, 240-41 (1978)(citation and footnotes omitted).  That
is, the power of state and local governments to "protect the
lives, health, morals, comfort and general welfare of the people
. . . is paramount to any rights under contracts between
individuals."  <u>Keystone Bituminous Coal Ass'n v. DeBenedictis</u>,
480 U.S. 470, 503 (1987) (quoting <u>Manigault v. Springs</u>, 199 U.S.
473, 480 (1905)).

To determine whether a state or local government has
interfered with a private contract in a manner that violates the
Contracts Clause, the court undertakes a three-step analysis.
<u>Energy Reserves Group, Inc. v. Kan. Power & Light Co.</u>, 459 U.S.
400, 411-13 (1983).  First, the state regulation must have

operated as a substantial impairment of a contractual
relationship.  Id. at 411.  If a substantial impairment is found,
then a court must determine if:  (1) the state regulation has a
significant and legitimate public purpose, id., and (2) the state
regulation is reasonably related to achieving that purpose.  Id.
at 412-13.

A state regulation substantially impairs the contract at
issue only if "a contractual relationship exists, that
relationship is impaired by a change in the law, and the
resultant impairment is substantial."  Alliance of Auto. Mfrs. v.
Gwadosky, 430 F.3d 30, 42 (1st Cir. 2005).  Although the
existence and impairment of a contractual relationship are
generally easy to establish, the courts have more stringently
interpreted the requirement that the impairment be substantial.
Id.  "The parties' reasonable expectations are central to the
issue of substantiality."  Id.  If the industry is one that has
historically been subject to regulation, then it is less likely
that the expectation that the contract would escape the
consequences of such regulation is reasonable.  See Energy
Reserves Group, 459 U.S. at 416 (holding that because state
authority to regulate natural gas prices was well-established and
the relevant contracts recognized the existence of such
regulation, new price regulation "was foreseeable as the type of

-17-

law that would alter contract obligations" and therefore did not substantially impair the gas contracts at issue); <u>Alliance of Auto. Mfrs.</u>, 430 F.3d at 42 (holding that because Maine has heavily regulated the automotive manufacturer-dealer franchise relationship, the franchise agreements at issue were "executed with the knowledge and expectation of pervasive state regulation," so that Maine's regulation of dealer repair reimbursement policies did not substantially impair the franchise contracts at issue).

In this case, Paragon argues that Hanover's 2006 zoning ordinance amendments made it impossible for Paragon to develop the Leavitt property as contemplated.  The amendments therefore substantially impaired Paragon's land purchase contract with the Leavitt family.  Despite the financial loss the zoning amendments caused Paragon, however, the zoning amendments did not "invade[] an area never before subject to regulation by the State."  <u>See Allied Structural Steel</u>, 438 U.S. at 250.  In fact, it is hard to imagine a field more subject to local regulation than land use, especially where multi-unit developments and buildings are concerned.  Paragon should have known (and undoubtedly did know) at the time it entered into the contract that local governments have long regulated land use and that Paragon's ability to build the structures it proposed was contingent upon its compliance

with local zoning ordinances.  Indeed, the land purchase contract explicitly contemplated the possibility that zoning ordinances would impose at least some limits on Paragon's construction plans.  Moreover, the particular topics addressed by the zoning amendments -- prohibiting certain classes of uses, amending density calculations, and amending lot size and frontage requirements -- are wholly typical subjects for a zoning ordinance to address.  The land purchase contract was therefore "executed with the knowledge and expectation of pervasive state regulation."  See Alliance of Auto. Mfrs., 430 F.3d at 42.  If Paragon wished to protect itself from the risk that planned developments or retirement communities would be prohibited or restricted uses, that the methods of making density calculations would change, or that lot size and frontage requirements would change, then it had ample opportunity to provide for such possibilities in the contract rather than afterward seeking to challenge Hanover's power to enact such regulations.

Accordingly, Paragon's claim fails on the substantial impairment prong of the analysis.  It is therefore unnecessary for the court to reach Paragon's argument that the zoning amendments were motivated by something other than a significant

-19-

and legitimate public purpose.[6]  Hanover is entitled to judgment
on the pleadings on the Contracts Clause claim.


**C.    Other claims**

As discussed with the parties at the motion hearing, as to
Paragon's remaining claims, the court denies Hanover's motion
without prejudice to being revisited later.


**IV.   CONCLUSION**

For the reasons set forth above, Hanover's motion for
judgment on the pleadings is granted as to counts four
(procedural due process) and seven (Contracts Clause).  As to the
remaining claims, the court denies Hanover's motion without
prejudice.

**SO ORDERED.**

_____
Joseph N. Laplante
United States District Judge

Dated:  August 8, 2008

---

[6] Paragon also argues that the zoning changes do not promote
the general welfare and should therefore be struck down as *ultra
vires*.  See Cmty. Res. for Justice Inc., 154 N.H. at 754; Britton
v. Town of Chester, 134 N.H. 434, 441 (1991).  To the extent this
argument implicates the Contracts Clause of the Constitution, it
goes to the significant and legitimate public purpose prong and
therefore need not be reached.

```
cc:  Robert H. Miller, Esq.
     Barry C. Schuster, Esq.
     R. Matthew Cairns, Esq.
     Andrew B. Livernois, Esq.
     Walter L. Mitchell, III, Esq.
     Laura Ann Spector, Esq.
```